IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| MITCHELL CRAIG HESS,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,[1]<br><br>    Defendant. | No. 9:21-CV-00111-MAC |

## REPORT AND RECOMMENDATION

The claimant, Mitchell Craig Hess, requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to his application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[2] For the reasons that follow, the undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore affirms the decision denying benefits.

## I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b)

---

[1]   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]   General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett,* 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[3] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award

---

[3] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292. Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II. BACKGROUND

A. Procedural History

Hess applied for disability insurance benefits on August 8, 2019, due to impairments that allegedly became disabling on February 20, 2018.[4] (Tr. 47.) These claims were initially denied on March 18, 2020 (Tr. 74-75), and upon reconsideration on September 2, 2020. (Tr. 81.) After a telephonic hearing held on January 26, 2021 (Tr. 131-44), the Administrative Law Judge ("ALJ") Ross Stubblefield issued an unfavorable decision dated February 4, 2021. (Tr. 15-24.) Hess requested review of the decision, which was granted (Tr. 138.) Ultimately, the Appeals Council denied Hess's request for review, and Hess consequently filed this appeal. (Tr. 1.) The undersigned has jurisdiction according to 42 U.S.C. § 405(g).

B. Personal Background

Hess has past relevant work as a motor vehicle dispatcher and timekeeper. (Tr. 23.) ALJ Stubblefield summarized Hess's testimony from the hearing:

> At the January 2021 hearing, the claimant testified he lived in a mobile home with his mother. The claimant alleged he was disabled and unable to work due to chronic back pain with radiating symptoms into his lower extremities. The claimant further testified he had sleep apnea and experienced shortness of breath with exertion. The hearing testimony indicated the claimant had obesity, heart problems, and diabetes mellitus. The claimant alleged he experienced lower extremity swelling and wore compression stockings. The claimant testified he experienced drowsiness/lethargy as medication side effects. He said he used a bilevel positive airway pressure (BiPAP) machine while sleeping to treat sleep apnea. He said the machine caused him to experience headaches in the morning. With regard to functional limitations, the claimant testified he could not lift a gallon of milk. The claimant reported difficulty bending. The claimant testified he could not climb stairs. He said he could not stand long periods. The claimant said he had to perform chores in segments with frequent breaks. The claimant

---

[4] Hess claims disability due to "back," neuropathy, diabetes, medication side effects, "no gall bladder, causes bowel issues," and "bowel issues cause poor hygiene issues." (Tr. 47.)

3

> mentioned he could prepare meals, but he said he typically had microwavable meals or fast food. The claimant said he had to sit down while cooking. The claimant indicated he used a motorized cart to shop for groceries. The claimant attested he could only drive one to two hours due to back pain. The claimant said he typically sat in a recliner with his legs elevated to relieve lower back pain, extremity pain, and extremity swelling. He said he usually watched television or looked at social media throughout the day.

(Tr. 20.)

    C.    <u>Administrative Decision</u>

ALJ Stubblefield utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Hess's application.[5] At step one, ALJ Stubblefield determined that Hess last met the insured status requirements of the Social Security Act through December 31, 2023, and has not engaged in substantial gainful activity since February 20, 2018 (the alleged onset date). (Tr. 17.) At step two, ALJ Stubblefield found that Hess had the following severe impairments: disorder of the spine, neuropathy, gastroesophageal reflux disease (GERD), coronary artery disease (CAD), thyroid disorder, obesity, diabetes mellitus, and sleep apnea. (Tr. 17.) At step three, he considered Hess's potential for Listings-Level impairments (spine disorders, ischemic heart disease, and peripheral neuropathy) and

---

[5] Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:

1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)

2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)

3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed, and benefits are awarded. If not, the analysis continues.)

4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

4

determined that none were met. (*Id.*) ALJ Stubblefield determined that Hess had the Residual Functional Capacity ("RFC") to perform sedentary work with the following limitations:

> the claimant is limited to only occasionally climbing ramps or stairs, stooping, kneeling, couching, crawling, and balancing. The claimant is further limited to never climbing ladders, ropes, or scaffolds. Lastly, the claimant must avoid all exposure to unprotected heights and hazardous machinery.

(Tr. 19.) Thereafter, at step four ALJ Stubblefield found that through the date last insured, Hess was capable of performing past relevant work as a motor vehicle dispatcher and timekeeper. (Tr. 23.) He ultimately concluded that Hess was not disabled from February 20, 2018, through February 4, 2021 (the date of his decision). (Tr. 24.)

### III. POINTS OF ERROR

On appeal, Hess raises two points of error. First, ALJ Stubblefield's RFC determination is not supported by substantial evidence because the hypothetical posed to the vocational witness did not incorporate all functional limitations supported by the record. Second, that ALJ Stubblefield erred in applying the proper legal standards when evaluating Hess's obesity in accordance with Social Security Ruling 19-2p. The Commissioner responds that ALJ Stubblefield properly considered the medical record regarding Hess's RFC, and that the decision is supported by substantial evidence.

### IV. VOCATIONAL EXPERT TESTIMONY

At step four, an ALJ may use the testimony of a vocational expert to obtain evidence needed to determine whether a claimant can perform past relevant work. 20 C.F.R. § 404.1560(b)(2). In eliciting expert vocational testimony, an ALJ typically poses a hypothetical question that incorporates all impairments that the ALJ has identified. If the impairments recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony, the ensuing decision is considered to be

5

supported by substantial evidence. *Morris v. Bowen*, 864 F.2d 333, 335-36 (5th Cir. 1988). However, if the hypothetical question is defective due to the ALJ's failure to accurately portray a claimant's physical and mental impairments, a determination of non-disability based on the vocational expert's answer to a defective question is not supported by substantial evidence and cannot stand. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). In this case, the vocational expert testified in response to hypotheticals posed by the ALJ and Hess's counsel as follows:

> Q:  [by ALJ Stubblefield]  Alrighty, if we have a hypothetical individual of this person's age, education, and past work experience, limited to sedentary work as defined by the Social Security Administration, but further only occasional climbing of ramps, stairs, stoop, kneel, crouch, crawl and balance, with no climbing of ladders, ropes, and scaffolds, should avoid all exposure to unprotected heights and hazardous machinery. If that was a hypothetical individual, could such a person perform any of claimant's past work?
>
> A:  Yes.
>
> Q:  Both positions or one?
>
> A:  They're sedentary, so both.
>
> Q:  Okay. Well then, I want to add to that then that in addition this individual would need to elevate their legs waist height for at least two to three hours during an eight-hour work period. If that was a hypothetical individual, could such a person then perform any of claimant's past work?
>
> A:  That's not addressed in the DOT. But in my opinion, using my training, education, experience and knowledge of the job market, that would preclude all employment.
>
> Q:  Okay, so there'd be no work. Thank you.
>         . . .
> Q:  [cross examination by counsel]  Ms. Rogers, what would be the level of off task behavior that would be permitted for these types of jobs?
>
> A:  In my opinion – that is not addressed in the DOT either, but in my opinion, no more than 15 percent.
>
> Q:  Okay. And if somebody needed unscheduled breaks during the day in addition to their normal breaks and lunch, would that be considered off task behavior as well?

> A: Well, it depends on the amount of breaks they needed.
>
> Q: If they had two 15-minute breaks in addition to their normal breaks, but they're unscheduled.
>
> A: In my – that also is not addressed in the DOT, but in my opinion, that would preclude all employment.

(Tr. 43-44.)

Hess argues that ALJ Stubblefield's hypothetical posed to the vocational expert is defective because it did not accurately portray all of the impairments supported by the medical record. Specifically, that ALJ Stubblefield erred in not including Hess's need to elevate his legs for 2-3 hours in a workday, needing two 15-minute unscheduled breaks in addition to normal breaks, and being off-task 15% of the workday. (Doc. No. 13, p. 9.)

Hess relies on *Bowling v. Shala*, which established a two-part test for determining when a defective hypothetical question produces reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representatives is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on a such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988); *Mesdo v. Kijakazi*, No. 9:20-CV-18, 2021 WL 3884170, at *6 (E.D. Tex. Aug. 31, 2021). The issues in *Bowling,* however, differ from those raised here. In *Bowling*, the ALJ misrepresented the claimant's RFC when posing the hypothetical to the vocational expert (the ALJ said one thing when he meant another). Here, ALJ Stubblefield's hypothetical correctly listed all the limitations he found to be supported by the record, and Hess is challenging whether

7

the RFC posed is supported by substantial evidence. The record clearly shows that the vocational expert was asked about "off-task" time and leg elevation. Ultimately, however, ALJ Stubblefield chose to exclude these limitations in his RFC determination. Hypothetical questions to a vocational expert shall include functional limitations the evidence supports and the ALJ recognizes. *See Masterson v. Barnhart,* 309 F.3d 267, 273 (5th Cir. 2002). However, the ALJ need not expressly name all of a claimant's impairments in his hypothetical question to a vocational expert. *See Hardman v. Colvin*, 820 F.2d 142, 148-149 (5th Cir. 2016). "[T]he ALJ need not rely on VE testimony that is based on evidentiary assumptions that the ALJ later concludes is unsupported by the objective medical evidence." *Brooks v. Astrue*, 2012 WL 3644743, at *7 (E.D. La. Aug. 9, 2012) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)); *Young v. Comm'r of Soc. Sec.*, No. CV 19-62-RLB, 2020 WL 572717, at *7 (M.D. La. Feb. 5, 2020). In short, ALJ Stubblefield was not required to adopt the vocational expert's testimony as it relates to Hess's allegations because he ultimately found those allegations were not supported by the record.

## V. SUBSTANTIAL EVIDENCE

Alternatively, Hess contends that substantial evidence does not support the RFC finding because ALJ Stubblefield should have included a need for leg elevation and time spent "off-task."

### A. Leg elevation

Hess argues that the medical record establishes a need to elevate his legs at eighty percent when sitting for long periods of time. He relies on a *Physical Residual Function Capacity Statement* for support, which he describes as treating physician opinion evidence stating "that as

a result of the Claimant's impairments, he should elevate his legs at eighty percent when sitting for long periods of time."[6] (Doc. No. 13, p. 6.)[7] The sentence to which Hess refers is #12(o):

> o. While prolonged sitting, should your patient's leg(s) be elevated? ☑ Yes  ☐ No  If yes, how high should the leg(s) be elevated (_____80%_____) and what percentage of time during an 8-hour work day should the patient's leg be elevated?_____

(Tr. 289.) ALJ Stubblefield found this opinion evidence "unpersuasive because there are too many inconsistencies to have any value." (Tr. 22.) In making this finding, ALJ Stubblefield explained:

> The record included a medical source statement dated October 10, 2019 (illegible signature). The medical opinion indicated the claimant could not concentrate due to pain. The opinion initially indicated the claimant needed to lie down 3 hours a day, but later mentioned the claimant needed to lie down only 2 hours. Additionally, the medical opinion mentioned the claimant could sit 3 hours at one time, but it also mentioned the claimant could only sit 2 hours during an 8-hour workday. The medical opinion indicated the claimant could stand and walk less than an hour. The medical opinion mentioned the claimant could lift up to 10 pounds. Additionally, the medical opinion assessed the claimant needed to take a break every 15 minutes, elevate his legs 80 percent high, and use a cane. Lastly, the medical opinion stated the claimant would miss more than 5 days of work per month, but it also said the claimant would be unable to complete an 8-hour workday less than one day per month. I considered this opinion unpersuasive because there were too many internal inconsistencies to have any value. In addition, the spine imaging results did not show any cord involvement. Thus, this opinion was not consistent with the objective testing.

(Tr. 22.)  Hess does not challenge the weight attributed to Dr. Bui's medical source statement and does not cite to any other document within the medical record that establishes his need for

---

[6] Hess cites to the court's docket page identification number at the top of the page (stamped by the court clerk when docketed), while the court and Commissioner cite to the Bates stamp page number on the bottom-right (presumably used by the Commissioner when the transcript is certified). For clarification, this report refers to the certified transcript Bates stamp number on the bottom-right side of the page.

[7] This statement is mostly illegible with the exception of the check boxes that are marked. The physician's name is indecipherable, and the document is simply described as "Physical RFC Statement dated 10/10/19" in the administrative transcript. The fax submission receipt indicates that it was forwarded to the Commissioner from Hess's attorney. Regardless, the undersigned accepts Hess's representation that Dr. Bui completed the statement in his capacity as a treating physician.

leg elevation during the workday. If ALJ Stubblefield committed no error in considering the evidence, he was correct to discount it. Because Hess cannot point to any other medical evidence that satisfies the substantial evidence standard, ALJ Stubblefield's finding that Hess did not need to elevate his legs during the workday was reasonable and supported by substantial evidence as explained in his decision.

B. **Time spent "off-task" attributable to medication and fatigue**

Hess also challenges ALJ Stubblefield's omission of drowsiness and "reduced cognitive functioning" as a result of his pain medications and muscle relaxers in his RFC.[8] (Doc. No. 13, p. 6.) In support of his argument, Hess relied on his testimony that the medication makes him so "groggy that he can't even think straight," and two citations to the medical record wherein he complained to medical providers about side effects. (Tr. 296) (Hess complains to Cherry Mathews, M.D., that Gabapentin makes him "goofy"); (Tr. 430) (Hess complains to Dr. Bui on October 10, 2019 that Gabapentin is not helping and causes drowsiness, with doctor notation that he has possible obstructive sleep apnea with limiting function and that cardiologist recommended sleep test, but Hess "had not done"). He seemingly also argues that his sleep apnea and obesity contribute to fatigue, which results in an inability to stay on-task.

Despite Hess's contention to the contrary, ALJ Stubblefield did account for these symptoms. First, in summarizing Hess's testimony, ALJ Stubblefield recognized his alleged "symptoms of drowsiness/lethargy as medication side effects." (Tr. 20.) ALJ Stubblefield included sleep apnea, neuropathy, and obesity at step two, and accounted for these impairments by limiting Hess to sedentary work. ALJ Stubblefield explicitly stated that he considered all the symptoms associated medication, and accepted those consistent with the evidence:

---

[8] Again, Hess does not challenge the method or analysis attributed to the medical opinion evidence, only that ALJ Stubblefield's decision to *not* include drowsiness and time spent "off task" in the RFC was not supported by substantial evidence.

10

> Although the claimant testified he experienced various medication side effects, treatment records did not support this allegation. One treatment record from October 2019 mentioned the claimant reported nerve medication caused him to feel "off balance"/drowsy, but these records indicated drowsiness could be related to obstructive sleep apnea. Recent 2020 treatment records showed the claimant consistently denied he experienced systemic symptoms, pain, cardiovascular symptoms, and gastrointestinal symptoms. Additionally, the claimant reported his lower back pain symptoms remained stable. Throughout the relevant period, treatment records indicated the claimant had no physical disabilities and performed normal activities of daily living.

(Tr. 21) (internal citations omitted). The record supports the ALJ's conclusion. (Tr. 260) (records state that Hess tolerated medication "well"); (Tr. 290) (treating physician note that he is "unsure" whether Hess RFC should account for time spent "off-task.") Therefore, the undersigned determines that ALJ Stubblefield's RFC assessment is supported by substantial evidence.

## V. EVALUATION OF OBESITY

In his second point of error, Hess contends that ALJ Stubblefield erred in evaluating his obesity in accordance with Social Security Ruling 19-2p.[9] S.S.R. 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity, SSR 19-2P (S.S.A. May 20, 2019) ("SSR 19-2p.") SSR 19-2p requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC" and to explain whether a claimant's obesity causes any limitations. *Id.*

Despite Hess's allegation to the contrary, ALJ Stubblefield considered and discussed his analysis pursuant to SSR 19-2p at step two in finding that Hess's obesity was a severe impairment:

> Lastly, the claimant's body mass index (BMI) appeared within the 50-59 range. A BMI is a measure of an individual's obesity. The medical community has defined obesity as a BMI of 30.0 or higher, but no specific weight or BMI establishes obesity as a severe impairment within the disability program. I have considered

---

[9] The Rulings are interpretive rules intended to offer guidance to agency adjudicators, and, while they do not have force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

>the claimant's obesity in terms of its possible effects on the claimant's ability to work and ability to perform activities of daily living in accordance with SSR 19-2p, which provides important guidance on evaluating obesity in adult and child disability claims. In this case, the claimant's obesity has not resulted in any catastrophic events, significant progression, or complications. Additionally, the claimant's obesity has not resulted in frequent or prolonged episodes of acute symptoms requiring surgical treatments, inpatient admissions, emergency room treatments, or other crisis treatment.

(Tr. 19.) Again, at step three ALJ Stubblefield cited to SSR 19-2p and discussed Hess's body mass index (BMI) in determining whether any of the Listings were satisfied. (*Id.*) And later in the opinion when he discussed the RFC determination, ALJ Stubblefield limited Hess to sedentary work based, in part, on "documented morbid obesity." (Tr. 22.) In *Zimmerman v. Astrue*, the Fifth Circuit held that an ALJ's decision limiting a morbidly obese claimant to sedentary (and even light work) was not error if the evidence did not support more significant restrictions. *Zimmerman v. Astrue*, 288 F. App'x 931, 934 (5th Cir. 2008). Simply because a claimant is obese does not mean that he suffers from any limitations *caused* by his obesity. The record must contain substantial evidence of limitations caused by a claimant's obesity in order for it to be included in the RFC.

Hess does not point to any objective evidence that demonstrates how his obesity caused more limitations than the ALJ assessed. Nor does he explain what more ALJ Stubblefield was required to do to comply with SSR 19-2p. He merely alleges that because he is morbidly obese, he is physically fatigued and cannot sustain the RFC assessed by ALJ Stubblefield.[10] Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the "burden of

---

[10] To the extent that Hess argues his morbid obesity required accommodations in the form of heavy-duty chairs and/or modified workspaces, the undersigned finds that this argument fails. There is no evidence to support his contention, and moreover, Hess's counsel was afforded an opportunity to include that limitation in the hypothetical posed to the vocational expert at the administrative hearing. Any potential error in omitting additional symptoms of impairments in a hypothetical question is minimized when the claimant is represented by counsel at the administrative hearing and is given a chance to amend the hypothetical question to ensure that it includes all necessary symptoms. *Reyes v. Barnhart*, 2002 WL 1492208, *6 (W.D. Tex. 2002) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-01849-DAP, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021), report and recommendation adopted, No. 1:20-CV-1849, 2021 WL 4987607 (N.D. Ohio Oct. 27, 2021). Accordingly, the undersigned finds that ALJ Stubblefield's consideration of Hess's obesity was free from error.

## VI. HARMLESS ERROR

Even assuming *arguendo* that ALJ Stubblefield committed legal error, administrative proceedings do not require "procedural perfection" if the error was harmless. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure."). Procedural errors affect the substantial rights of a claimant only when they cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)). Meaning, an ALJ's error does not require remand unless the decision is not supported by substantial evidence.

A finding of no substantial evidence is appropriate if **no credible evidentiary choices or medical findings support the decision**. *See Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). Hess carries the burden to produce objective medical evidence of a condition that could reasonably be expected to produce the alleged symptoms. *Selders v. Sullivan*, 914 F.2d 614, 618

13

(5th Cir. 1990); *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989.)  The medical record demonstrates (and the ALJ recognized) that Hess suffers from the following severe impairments: disorder of the spine, neuropathy, gastroesophageal reflux disease (GERD), coronary artery disease (CAD), thyroid disorder, obesity, diabetes mellitus, and sleep apnea.  However, ALJ Stubblefield concluded that these impairments do not cause limitations to render Hess disabled.  The undersigned has meticulously scoured the medical evidence and agrees.

The record contains consistent notations from Hess's treating physician, Dr. Bui, that Hess exhibited **no physical disability and engaged in normal daily activities**.  (Tr. 372 (on March 22, 2019); Tr. 375 (on March 11, 2020); Tr. 381 (on February 20, 2020); Tr. 413 (on May 29, 2020); Tr. 431 (on October 10, 2019); Tr. 445 (on August 8, 2019); Tr. 451 (on March 21, 2019); Tr. 458 (on March 13, 2019); Tr. 520 (on December 3, 2020); Tr. 528 (on October 18, 2020); and Tr. 535 (on September 9, 2020).  These eleven notations from Hess's treating doctor during the relevant period constitute substantial evidence to support ALJ Stubblefield's opinion that Hess was not disabled during the relevant period.

## VII.  RECOMMENDATION

Here, Hess urges the court to recognize ALJ Stubblefield's deficient analysis of his RFC and remand for lack of substantial evidence.  "Determining a claimant's residual functioning capacity is the ALJ's responsibility, and he has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (citing *Ripley*, 67 F.3d at 557; *Holman v. Massanari*, 275 F.3d 43 (5th Cir. 2001) (per curiam)).  For the reasons discussed *supra*, the undersigned finds that the administrative decision is free from legal error and supported by substantial evidence.  Consequently, the undersigned recommends affirming the decision denying benefits.

## **VIII.  OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1) (2009); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 11th day of April, 2023.

_____
Zack Hawthorn
United States Magistrate Judge